UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
                                          :

ROBERT SYLVESTER KELLY,     :
      also known as "R. Kelly,"     :
                                          :
                                          :
-vs-                               :
                               :       COMPLAINT AND JURY DEMAND
                               :
HERIBERTO H. TELLEZ, warden;   :
METROPOLITAN DETENTION      :
CENTER BROOKLYN; UNITED STATES :
OF AMERICA; UNKNOWN MDC   :
BROOKLYN OFFICIALS        :
--------------------------------------------------X

       Plaintiff, ROBERT S. KELLY, by and through his attorneys, the Bonjean Law Group,

PLLC, for his Complaint alleges as follows:

<u>**NAURE OF THE ACTION**</u>

       1.     Plaintiff is currently an inmate at the Metropolitan Detention Center ("MDC

Brooklyn"), a federal detention center in Brooklyn, New York.

       2.     On June 29, 2022, Plaintiff was sentenced before the Honorable Judge Ann

Donnelly in connection with his criminal case under indictment number 19 CR 286.

       3.     Despite having no suicidal tendencies, the Defendant and MDC officials placed

Plaintiff under the harsh conditions of suicide watch immediately after his sentencing hearing,

causing him serious and irreparable harm.

       4.     Plaintiff was placed on suicide watch as a form of punishment even though he

was not suicidal, causing him severe mental distress. This conduct is the result of negligence and

deliberate indifference of the Defendants and numerous federal officials.

5.      Defendant knew that Plaintiff was not a suicide risk when they placed him under suicide watch subjecting him to cruel confinement. Plaintiff was placed on suicide watch solely for punitive purposes and because of his status as a high-profile inmate.

## JURISDICTION AND VENUE

6.      This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.,* and the United States Constitution, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

7.      This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a), 1346(b), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9.      Plaintiff, Robert Kelly, is an individual who is currently housed in the MDC.

10.     Defendant Warden Heriberto H. Tellez is the Warden of MDC Brooklyn and at times relevant to this lawsuit. Defendant Tellez is sued in his individual capacity.

11.     Defendant MDC is a federal correctional facility located in Brooklyn, New York.

12.     Defendant United States of America (the "United States") at all relevant times operated the MDC Brooklyn and employed Defendant Tellez. Defendant United States is sued under the Federal Tort Claims Act for the wrongful and tortious acts of its employees and agencies.

13.     Defendant Unknown MDC Brooklyn Officials are officials who either had supervisory authority and/or the opportunity to observe and intervene with respect to the acts of placing Defendant under suicide watch even though he was not suicidal.

**JURY DEMAND**

14.    Plaintiff hereby demands a trial by jury on all of his claims in this action.

**FACTUAL ALLEGATIONS**

15.    Mr. Kelly was sentenced before the Honorable Judge Ann Donnelly on June 29,

2022, in connection with case 19-CR-286. After his sentencing hearing, Mr. Kelly was placed on

suicide watch in violation of his Eighth Amendment guarantees because he is *not* suicidal and

expressly told MDC officials that he was not suicidal and had no thoughts of harming himself or

others.

16.    MDC-Brooklyn has a policy of punishing high profile inmates by placing them

under the harsh conditions of suicide watch even though they are not suicidal. Indeed, as recently

as June 25, 2022, another high-profile inmate, Ghislaine Maxwell, was placed on suicide watch

even though she was not suicidal. MDC Brooklyn's policy can only be described as arbitrary,

cruel, and unconstitutional.

17.    Mr. Kelly and his attorneys had lengthy discussions in advance of his sentencing

regarding the outcome of his sentencing proceedings and Mr. Kelly was fully prepared for his

sentencing hearing. Nothing occurred during sentencing that came as a surprise to Mr. Kelly. In

the days leading up to sentencing, Mr. Kelly preemptively expressed a concern to his counsel

that MDC would place him on suicide watch as a matter of policy (as it did after his jury

returned a verdict of guilt) even though he was not suicidal. Mr. Kelly repeatedly stated to his

counsel and anyone who would listen at MDC that he was *not* suicidal and had *no* thoughts of

hurting himself.

18.    Mr. Kelly suffered emotional distress after he was placed on suicide watch after

the jury verdict in his case on September 27, 20201 even though he was not suicidal. Mr. Kelly

harbored legitimate concerns that MDC would again place him on suicide watch after his sentencing for punitive reasons.

19.     Immediately after his sentencing hearing, Mr. Kelly's counsel spoke with Mr. Kelly and Mr. Kelly *again* reiterated that he was *not* experiencing any feelings of hopelessness or any thoughts of hurting himself. Mr. Kelly was behaving in a totally appropriate manner but was concerned that MDC Brooklyn would place him on suicide watch without justification for doing so.

20.     Mr. Kelly and his attorneys put a plan in place where Mr. Kelly was instructed to email his attorney upon return to the MDC to confirm he had not been placed on suicide watch and that if his attorney did not receive such an email, his attorney would begin inquiring of his status.

21.     When his attorneys did not receive an email from Mr. Kelly, his attorneys immediately began reaching out the MDC and was stonewalled for 48 hours. MDC employees refused to put counsel through to anyone in the legal department to discuss Mr. Kelly's status. Indeed, MDC employees repeatedly obstructed undersigned counsel's ability to determine the well-being of Mr. Kelly and advocate for him. The legal department ignored counsel's many emails and messages.

22.     Through the assistance of the prosecutors on Mr. Kelly's case, Mr. Kelly's attorneys confirmed that he was indeed placed on suicide watch. Mr. Kelly's placement on suicide watch is unrelated to him being suicidal and was done consistent with MDC's policy designed to cause harm to high profile inmates.

23.     While the conditions of suicide watch may be appropriate for individuals who are truly at risk of hurting themselves, they are cruel and unconstitutional under the Eighth Amendment for individuals who are not suicidal. They are a form of illegal punishment.

24.     The conditions of suicide watch for someone who is *not* suicidal can and does cause serious mental harm. The conditions of confinement on "suicide watch" are by all accounts harsh and are likely to hurt an inmate's mental health rather than help it. Inmates are stripped of their clothing and underwear and dressed in a smock made of material that is akin to the material that moving companies use when wrapping furniture.

25.     Inmates are typically placed in a single cell without bed rails and offered no items of comfort. They cannot shower or shave and are sometimes not even afforded toilet paper. Meals are not provided with utensils, forcing inmates to eat with their hands. They have no ability to consult with loved ones or supportive figures. And of course, they are monitored 24-7 by prison officials. Ironically, individuals on "suicide watch" don't even receive psychiatric care.

26.     Mr. Kelly's placement on suicide watch was solely punitive because Mr. Kelly is a high-profile inmate.

**FIRST CAUSE OF ACTION**
**(Cruel and Unusual Punishment)**
**(Eighth Amendment/*Bivens*)**

27.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

28.     By subjecting Plaintiff to the harsh conditions of suicide watch when he is not suicidal, the Defendants have violated Plaintiff's right to be free from cruel and unusual punishment.

29.     The Defendants knew or should have known that there was a high degree of risk of harm to Plaintiff by subjecting him to the conditions of suicide watch when he was not a risk

of suicide watch and that by so doing, they were creating psychological harm rather protecting

Plaintiff from it.

30.     The Defendants acted with a deliberate and/or reckless disregard of the risk that

Plaintiff's Eighth Amendment rights would be violated.

31.     At all relevant times, the Defendants acted under color of federal law.

32.     As a result of Defendants' acts and/or omission, Plaintiff suffered damages,

including emotional harm.

### SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (Federal Tort Claims Act)

33.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

34.     By subjecting Plaintiff to the harsh conditions of suicide watch when he is not

suicidal, the Defendants have engaged in extreme and outrageous conduct.

35.     Defendants acted with the intent to cause, and/or disregard of a substantial

probability of causing, severe emotional distress.

36.     As a direct result of the actions of the Defendants, Defendant has suffered severe

emotional distress.

37.     The Defendants knew or should have known that there was a high degree of risk

of harm to Plaintiff by subjecting him to the conditions of suicide watch when he was not a risk

of suicide watch and that by so doing, they were creating psychological harm rather protecting

Plaintiff from it.

38.     The Defendants acted with a deliberate and/or reckless disregard of the risk that

Plaintiff's Eighth Amendment rights would be violated.

39.     At all relevant times, the Defendant acted under color of federal law.

40.     As a result of Defendants' acts and/or omission, Plaintiff suffered damages, including emotional harm.

### THIRD CAUSE OF ACTION
### (Negligence)
### (Federal Tort Claims Act)

41.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

42.     The United States and its employees have a duty of care to Mr. Kelly while he is incarcerated at MDC Brooklyn.

43.     Employees of the United States know that by placing a mentally stable person into the harsh conditions of suicide watch, they will cause mental distress and other psychological injury to the person.

44.     Employees of the United States acted negligently in hiring, training, and supervising those MDC officials who made a determination that Plaintiff should be placed on suicide watch even though he was not a risk of suicide.

45.     Employees of the United States acted negligently in failing to take reasonable steps to prevent non-suicidal inmates from being placed on suicide watch.

46      Employees should have known that Mr. Kelly was not suicidal and should not have been placed under the harsh conditions of suicide watch.

47.     Employees of the United States were acting within the scope of their employment when they engaged in these negligence acts and/or omissions.

48.     As a result of that negligence, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against the Defendants as follows:

a.      award of compensatory damages for all emotional distress, humiliation, pain and

suffering, and other harm in an amount to be determined at trial;

b.      award of punitive damages in an amount to be determined at trial;

c.      award of pre and post-judgment interest, attorneys' fees and costs;

d.      any such relief the Court may deem just and proper.

Dated:  New York, New York
        July 1, 2022                                    Bonjean Law Group, PLLC


                                                        By: /s/JENNIFER BONJEAN

Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY  10022
718-875-1850